UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DONALD MOORE, SR., INDIVIDUALLY, | * | |
| DONALD MOORE, JR., INDIVIDUALLY, | * | SECTION: " " |
| WENDY A. BRUNET, INDIVIDUALLY AND | * | |
| MELISSA M. MOORE ADAIR, INDIVIDUALLY | * | |
| | * | JUDGE: " " |
| Plaintiffs | * | |
| | * | MAGISTRATE: " " |
| VS. | * | |
| | * | |
| EXONMOBIL CORPORATION; | * | |
| BRIDGESTONE AMERICAS TIRE | * | |
| OPERATIONS, LLC f/k/a BRIDGESTONE/ | * | |
| FIRESTONE, INC. and FIRESTONE TIRE & | * | |
| RUBBER COMPANY; CHEVRON USA, INC. f/k/a | * | |
| GULF OIL CORPORATION and TEXACO, INC.; | * | |
| SHELL OIL COMPANY; RADIATOR | * | |
| SPECIALTY COMPANY; UNITED STATES | * | |
| STEEL CORPORATION; AND THE | * | |
| SHERWIN-WILLIAMS COMPANY | * | |
| | * | |
| Defendants | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**Plaintiffs' Original Complaint**

The plaintiffs, **DONALD MOORE, SR., DONALD MOORE, JR., WENDY A. BRUNET,** and **MELISSA A. MOORE ADAIR** through their attorneys, file this Complaint as follows:

**Parties**

1.

A.   *The Plaintiffs*

The plaintiffs are:

i.   **Donald Moore, Sr.,** a major residing in Poplarville, Mississippi;

ii.  **Donald Moore, Jr.**, a major residing in Jacksonville, Florida;

1

  iii. **Wendy A. Brunet,** a major residing in New Orleans, Louisiana; and

  iv. **Melissa M. Moore Adair,** a major residing in Orlando, Florida.

B. *The Defendants*

The defendants are:

 i.  **ExxonMobil Corporation,** as the successor in interest to Exxon Corporation, Humble Oil & Refining Co., Esso, Inc., a foreign corporation, which is registered to do business in this state with its registered business office, and principal place of business in Texas, and New Jersey and whose agent for service of process is Corporation Service Company 320 Somerulos St., Baton Rouge, Louisiana 70802;

 ii. **Bridegestone Americas Tire Operations, LLC,** as successor in interest to Bridgestone/Firestone, Inc. and the Firestone Tire & Rubber Company, a foreign corporation, which is registered to do business in this state with its registered business office in Delaware and principal place of business in Tennessee, and whose agent for service of process is National Registered Agents, Inc., 1011 N. Causeway Blvd., Ste. 3, Mandeville, LA 70471.

 iii.  **Chevron USA, Inc.** as successor in interest to Gulf Oil Corporation and Texaco, Inc., a foreign corporation, which is registered to do business in this state with its registered business office and principal place of business in Pennsylvania and California and whose agent for service of process is The Prentice Hall Corporation System, Inc. 320 Somerulos St., Baton Rouge, Louisiana 70802;

 iv.   **Shell Oil Company**, a foreign corporation, which is regisered to do business in this state with its registered business office and principle place of business in Delaware and

Texas and whose agent for service of proess is CT Corporation, 5615 Corporate Blvd., Ste. 400 B, Baton Rouge, Louisiana 70808.

v. **Radiator Specialty Company,** a foreign corporation, which is registered to do business in this state with it's registered business office and principle place of business in North Carolina, and whose mailing address is 1900 Wilkinson Blvd., Charlotte, North Carolina 28208.

vi. **United States Steel Corporation,** as successor in interest to US Steel Corporation and USX Corporation, a foreign corporation, which is registered to do business in this state with its registered business office in Delaware and principal place of business in Pennsylvania and whose agent for service of process is National Registered Agents, Inc., 1011 N. Causeway Blvd., Ste. 3, Mandeville, LA 70471.

vii. **The Sherwin-Williams Company,** a foreign corporation, which is registered to do business in this state with its registered business office and principal place of business in Ohio and whose agent for service of process is The Prentice Hall Corporation System, Inc. 320 Somerulos St., Baton Rouge, Louisiana 70802;

**Jurisdiction and Venue**

2.

This Court has jurisdiction under 28 U.S.C. § 1332 in that there is diversity of citizenship among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3.

This Court has personal jurisdiction over the defendants who are doing business in the district or who did business in this district at a relevant time.

4.

The defendant is incorporated under the laws of New Jersey, North Carolina, Delaware, Ohio, Pennsylvania and Texas respectively, with their principal places of business in Ohio, Texas, North Carolina, Tennessee, Pennsylvania and California.

5.

Venue is proper in this district under 28 U.S.C. § 1391 (b)-(c) because the defendants are doing business in this district and because the events giving rise to the plaintiffs' causes of actions arose in this district.

**Background**

6.

Donald Moore, Sr. ("Mr. Moore") worked on cars, bikes and motor-bikes and cleaned guns as a police officer with Liquid Wrench which was manufactured by Radiator Specialty Company from 1952 through 1978. United States Steel Corporation placed products such as raffinate, an ingredient of Liquid Wrench in the stream of commerce from 1952 through 1978. Mr. Moore used paints, thinners, cleaners and strippers manufactured by Sherwin Williams from 1958 through 1959. Mr. Moore also used Esso Rust-Ban, Varsol, Esso Handy Oil, Mobil Penetrating Oil, and Mobil Handy Oil which were manufactured by ExxonMobil Corporation f/k/a Mobil Corporation, Humble Oil & Refining Company and Esso, Inc. to work on cars, bikes, motor bikes and other equipment from 1954 through 1978.  Mr. Moore also used Shell Lock Ease, Shell Vinyl Cleaner, Shell Solvents, and Shell Lighter Fluid and Spot Remover to work on locks, clean cars and remove spots from various objects from 1954 through 1978. He also used Firestone Rubber Cement, Firestone Paint Thinner and a Firestone Rubber Repair Kit

manufactured by Bridgestone Americas Tire Operations, LLC f/k/a Bridgestone/Firestone, Inc. and Firestone Tire & Rubber Company from 1952 through 1978. He also used Gulf Engine Degreaser and Gulf Lock Ease manufactured by Chevron USA, Inc. formerly known as Gulf Oil Corporation from 1954 through 1978. He also used Texaco Carburetor Cleaner and a Texaco Rubber Repair Kit from 1954 through 1978. These products were manufactured, supplied, distributed and sold by defendants, ExxonMobil Corporation, Bridgestone Americas Tire Operations, LLC, Chevron USA, Inc., Shell Oil Company, Radiator Specialty Company, United States Steel Corporation and The Sherwin-Williams Company.

7.

From 1952 through 1978 he would regularly use or come into contact with pure benzene or benzene-containing products including Liquid Wrench, Sherwin Williams paints, thinners, cleaners and strippers, Esso Rust-Ban, Varsol, Esso Handy Oil, Mobil Penetrating Oil, and Mobil Handy Oil Firestone Rubber Cement, Firestone Tire Repair Kit, Firestone Paint Thinner, and Tire Repair Kit, Shell Lock Ease, Shell Vinyl Cleaner, Shell Solvents, and Shell Lighter Fluid and Spot Remover, Gulf Engine Degreaser, Gulf Lock Ease, Texaco Carburetor Cleaner, and a Texaco Rubber Repair Kit. Mr. Moore used these products on a daily basis from at least 1952 through 1978. On March 04, 2011, Mr. Moore was diagnosed with multiple myeloma due to his exposure to benzene and benzene-containing products.

8.

At all material times herein, defendants, ExxonMobil Corporation, Bridgestone Americas Tire Operations, LLC, Chevron USA, Inc., Shell Oil Company, Radiator Specialty Company, United States Steel Corporation and The Sherwin-Williams Company, were manufacturers, distributors, sellers and, suppliers, of benzene or benzene-containing products.

9.

While cleaning guns, working on cars, bikes, motor-bikes, cleaning guns, locks and with paint products, Mr. Moore was exposed daily to high levels of benzene. He was also exposed to high levels of benzene from products manufactured, distributed or sold by the defendants.

10.

Mr. Moore sustained tissue damage shortly after each exposure to benzene, resulting in distinct bodily injuries in each year from 1952 through 1978.

11.

The health hazards of benzene have been recognized for over one hundred years. Benzene has been recognized as a carcinogen known to cause leukemia. By the end of 1948, it was widely known to those in defendants' industry in the United States, as well as the named defendants or their predecessors, that exposure to benzene could cause a myriad of ill health effects including such diseases as leukemia, multiple myeloma, lymphoma and other blood disorders.

12.

Through industry and medical studies unknown to plaintiffs, the defendants knew or should have known of the health hazards inherent in the products they manufactured, distributed, sold, supplied, owned, transported, or used. The actions or inactions of the defendants constitute gross negligence and demonstrate a reckless disregard for the rights and safety of others. Furthermore, the defendants committed numerous tortious acts that include, without limitation, negligently misrepresenting, concealing, suppressing, and omitting material information about the health effects of benzene and precautionary measures in regard thereto, as specifically alleged below.

13.

As a direct and proximate result of exposure to benzene and products containing high levels of benzene, Mr. Moore suffered injury including, but not limited to, multiple myeloma; physical damage, severe physical and mental pain, fear of further disease processes, disability, medical expenses, and loss of enjoyment of life.

14.

The causal connection between Mr. Moore's injuries and benzene has been scientifically documented since 1948.

15.

The development of multiple myeloma as a result of chronic benzene exposure has been well documented, and death resulting from multiple myeloma has been associated with benzene exposure.

16.

Multiple myeloma is a malignant disease that affects the blood and bone marrow.

17.

Scientists have also linked myelodysplastic syndrome (MDS), aplastic anemia, pancytopenia, cytopenias, myelofibrosis, and polycythemia vera to benzene exposure

18.

The adverse impact of exposure to levels of benzene has been known to range from less than five years to in excess of fifty years.

19.

Practically all of the adverse chronic effects of exposure to benzene and its oxidation products are a result of their influence on the blood forming system.

20.

Exposure to benzene is usually through inhalation, although skin contact may occur. Chronic benzene poisoning results from repeated or continuous exposure to relatively low concentrations of benzene vapors.

21.

Long-term benzene exposure may also adversely impact marrow and bone production. Breathing benzene can cause drowsiness, dizziness, rapid heart rate, headaches, tremors, confusion, and unconsciousness. Breathing very high levels of benzene can also result in death. Eating or drinking foods containing high levels of benzene can cause vomiting, irritation of the stomach, dizziness, sleepiness, convulsions, rapid heart rate, and death.

22.

In the September 1948 edition of the American Petroleum Institute, Toxicological Review, the authors recommended precautionary measures for workers who are exposed to benzene. Furthermore, they stated that benzene use was extensive in the petroleum industry with the greatest amount of benzene blended into motor gasoline.

23.

As of 1948, the American Standards Association and most states had set an arbitrary limit of 100 ppm as the maximum permissible benzene concentration for workers exposed to this substance during an 8-hour day. In as much as, the body develops no tolerance to benzene, and as there is a wide variation to individual susceptibility, it is generally considered that the only absolute safe concentration for benzene is zero. The concentration of benzene vapor in the air should be checked regularly in situations where excessive exposures are apt to be encountered.

24.

The safety measures necessary for the prevention of benzene poisoning are primarily those designed to prevent the inhalation of benzene vapor. Ventilation should be designed to prevent toxic concentrations of the vapor from reaching the breathing zone of individuals who may potentially be exposed. Individuals who must be exposed to benzene vapor should be rotated to reduce their exposure time to a minimum. When excessive concentrations are unavoidably encountered in operations—such as the cleaning of tank cars, vats, storage tanks—air masks should be employed. Skin contact and possible dermatitis from benzene should be avoided entirely if possible; but, if the hands must contact the solvent, then neoprene gloves or protective creams should be used.

25.

The defendant knew or should have known about the causal relationship between benzene and cancer-related illnesses. The defendant failed to warn Mr. Moore and other similarly situated workers about the health hazards associated with benzene.

26.

The defendant is guilty of negligence, gross-negligence, strict liability, and fault identified throughout this complaint more specifically as follows:

**Negligence**

27.

The defendant breached duties, which they owned to Mr. Moore and the plaintiffs to exercise proper care in manufacturing and selling their respective products. More specifically, they breached the following duties:

a) to design their products to contain available and suitable products other than benzene;

b) to sell benzene-free products;

c) to select materials other than benzene for inclusion into their products;

d) to fully test their respective products for health risks associated with the normal and intended use of their products;

e) to fully instruct and warn users and bystanders in the uses of their respective products so as to eliminate or reduce the health hazards associated with their normal and intended use;

f) to fully warn foreseeable users and bystanders as additional medical knowledge became available concerning the health hazards associated with their products;

g) to recall their products upon discovering, or at the time they should have discovered, the health hazards associated with those products;

h) to inspect fully and adequately the design, selection, testing, instruction and warnings that should have accompanied the sale of such products;

i) to refrain form negligently misrepresenting the safety and health risks of the products they sold;

j) to inquire about or investigate the safety and health risks of the products they sold;

k) to research, study and be aware of medical and scientific studies concerning the health hazards of benzene; and

l) other acts which may be revealed at the trial of this matter.

28.

As a direct and proximate result of the defendants' negligent breach of their duties, the plaintiffs have sustained injuries, damages and losses. The scope of the duties breached by the defendants encompasses the risk of the injuries sustained by the plaintiffs, the duties breached

were intended to protect the plaintiffs from the injuries they have sustained, and the defendants' breaches of their duties constituted the direct legal cause of the injuries to the plaintiffs. The defendants are thus jointly and solidarily liable for all damages caused by their breaches.

## Strict Product Liability

29.

Exposure to benzene from the defendants' products and/or products under their care, custody and control resulted from the normal, foreseeable, and intended use of the products, without substantial change in the condition in which the defendants sold or supplied these products.

30.

The defendants' products were defective, presented an unreasonable risk of harm, and were unreasonably dangerous under normal use at the time the products left the respective defendants' control.

31.

Mr. Moore was an intended and foreseeable user of the alleged defective products and damages and defendants could reasonably have anticipated the losses to the plaintiffs.

32.

The defects in the defendants' products and equipment include, but are not limited to, the following:

a. inherent characteristics (known to the defendants) that gave the products such a potential for causing health problems as to render the products unreasonably dangerous per se;

b.  lack of warnings or lack of sufficient warnings of the inherently dangerous properties of the products when used in the fashion in which they were anticipated or should have been anticipated being used;

c.  lack of warnings or lack of sufficient instructions for eliminating the health risks inherent in the use of the products;

d.  lack of sufficient inspections by the defendants of their products to ensure that such products contained sufficient warnings of the dangerous properties of the products;

e.  lack of reasonable inspections by the defendants of their products to ensure that such products contained sufficient instructions for eliminating or minimizing the health risks inherent in the use of the products;

f.  lack of tests or lack of sufficient tests to determine the effect of benzene vapors on intended users and bystanders;

g.  defective designs calling for the inclusion of benzene in products that did not require benzene, when alternative, equally suitable substances were available, and

h.  other acts which may be revealed at the trial of this matter.

33.

The defendants sold their products with conscious disregard for the safety of users of the products and other persons who might be injured thereby.

34.

As a result of the defective and unreasonably dangerous condition and composition of the benzene-containing products manufactured, distributed and/or sold by all defendants, Mr. Moore inhaled benzene fumes and other harmful substances emitted by the normal use of the products,

proximately causing multiple myeloma related to benzene exposure from which he suffers and for which these defendants are strictly liable under Louisiana law.

35.

The defective condition of the defendants' products proximately caused or substantially contributed to plaintiffs' injuries or damages as described elsewhere herein. The defendants are hence jointly and solidarily strictly liable for the damages caused by their fault.

**Damages Sustained by Mr. Moores' Children**

36.

Due to the defendants' fault, as described above, and because of the benzene-related injuries of Mr. Moore the plaintiffs have suffered loss of consortium, loss of services, loss of affection, and loss of nurture and are entitled to damages as are reasonable.

**Compensatory Damages**

37.

As a result of the acts and omissions of the defendants, the plaintiffs are entitled to recover money damages, both past and future, for all elements of damages allowed by Louisiana law. These damages are, without limitation:

a) Past, present, and future physical pain and suffering;

b) Past, present, and future mental anguish and emotional distress;

c) Disfigurement and embarrassment;

d) Physical Impairment;

e) Past and future earnings;

f) Lost earning capacity;

g) Physical Impairment;

h) Physical and Mental Disabilities;

i) Past, present, and future medical care, convalescence, mental and physical therapy and all other health care expenses;

j) Loss of enjoyment of life;

k) Fear of cancer and other diseases;

l) Expenses to train, educate or otherwise enable the plaintiffs to be gainfully employed;

m) Loss of society, consortium, companionship, services, nurture, and love and affection;

n) Wrongful death damages; and

o) Survival damages.

## Jury Trial

38.

The plaintiffs pray for trial by jury.

## Prayer

39.

For these reasons, the plaintiffs ask that ExxonMobil Corporation, Bridgestone Americas Tire Operations, LLC, Chevron USA, Inc., Shell Oil Company, Radiator Specialty Company, United States Steel Corporation, and The Sherwin-Williams Company be cited to appear and answer, and that on final trial, the plaintiffs have:

I.    Judgment against ExxonMobil Corporation, Bridgestone Americas Tire Operations, LLC, Chevron USA, Inc., Shell Oil Company, Radiator Specialty Company, United States Steel Corporation and The Sherwin-Williams Company for the actual and special damages suffered by the plaintiffs as a result of defendant's conduct;

II.   Costs of suit;

III.  Prejudgment and post-judgment interest at the highest rate provided by law; and

IV.   All other and further relief to which the plaintiffs may be entitled.

Respectfully Submitted:

**/s/ *L. Eric Williams, Jr.***
 L. Eric Williams, Jr. (La. Bar No. 26773)
**Williams Law Office, LLC**
433 Metairie Road, Suite 404
Metairie, Louisiana  70005
Telephone:  (504) 832-9898
Facsimile:   (504) 832-9811
E-mail:  eric@amlbenzene.net

and

Richard J. Fernandez (La. Bar No. 5532)
Amber Cisney (La. Bar No. 28821)
**Richard J. Fernandez, LLC**
3000 West Esplanade Avenue, Suite 200
Metairie, Louisiana 70002
Telephone:    (504) 834-8500
Facsimile:     (504) 834-1511
E-mail:         rick@rjfernandez.com
E-mail:         amber@amlbenzene.net

**ATTORNEYS FOR PLAINTIFFS**

**PLEASE SERVE:**

**ExxonMobil Corporation**
Through its Registered Agent
The Prentice Hall Corporation Systems, Inc.
320 Somerulos St.
Baton Rouge, Louisiana 70802

**Bridegestone Americas Tire Operations, LLC,**
Through its agent for service of process
National Registered Agents, Inc.,
1011 N. Causeway Blvd., Ste. 3,
Mandeville, LA 70471

**Chevron USA, Inc.**
Through it's Registered Agent
The Prentice Hall Corporation Systems, Inc.
320 Somerulos St.
Baton Rouge, Louisiana 70802

**Shell Oil Company**
Through it's Registered Agent
CT Corporation
5615 Corporate Blvs., Ste. 400B
Baton Rouge, Louisiana 70808

**Radiator Specialty Company**
1900 Wilkinson Blvd.
Charlotte, North Carolina 28208

**United States Steel Corporation**
Through its agent for service of process
National Registered Agents, Inc.,
1011 N. Causeway Blvd., Ste. 3,
Mandeville, LA 70471

**The Sherwin-Williams Company**
Through it's Registered Agent
The Prentice Hall Corporation Systems, Inc.
320 Somerulos St.
Baton Rouge, Louisiana 70802